**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
Alexander E. Wolf (SBN 299775)
awolf@milberg.com
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212
T: (872) 365.7060

Gary M. Klinger (PHV forthcoming)
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
T: (866) 252-0878
gklinger@milberg.com

**LAUKAITIS LAW LLC**
Kevin Laukaitis (PHV forthcoming)
klaukaitis@laukaitislaw.com
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 789-4462

*Additional Attorneys in Signature Block*

***Attorneys for Plaintiff and the Putative Class***

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGARY JOHNSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BABY TREND, INC.,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1

## CLASS ACTION COMPLAINT

Plaintiff Gregory Johnson ("**Plaintiff**"), on behalf of himself and all others similarly situated, brings this class action against Defendant Baby Trend, Inc. ("**Baby Trend**" or "**Defendant**") and alleges on personal knowledge, investigation of his counsel, and information and belief as follows:

## INTRODUCTION

1.    This is a nationwide class action brought by Plaintiff on behalf of himself and other similarly situated consumers who purchased Baby Trend's Sit N' Stand Double and Ultra Strollers, whose model numbers begin with "SS76" or "SS66" (collectively, the "**Noticed Products**"[1]) for personal or household use and not for resale ("**Class**"[2] or "**Class Members**").

2.    Baby Trend manufactures, distributes, markets, and sells children's products nationwide.

3.    Baby Trend purportedly promotes its products' quality, comfort, and style on its website: "Baby Trend offers products at top tier quality that are durable and safe for baby."[3]

4.    Baby Trend sells its products online at its website, babytrend.com, and at other online and brick-and-mortar retailers, including but not limited to: VM Innovations, Target, Walmart, Amazon.com, bedbathandbeyond.com, Kohl's, and buybuy Baby.

5.    On February 9, 2023, the U.S. Consumer Product Safety Commission ("CPSC") and Baby Trend announced a "warning" of the Noticed Products sold

---

[1] Plaintiff reserves the right to amend or modify the definition of the Notice Products based on information learned in discovery and further investigation.
[2] The precise definition of the Class is found below. Plaintiff reserves the right to amend or modify the definition of the Class based on information learned in discovery and further investigation.
[3] *See* https://babytrend.com/pages/about-us (last accessed June 26, 2023).

CLASS ACTION COMPLAINT

in the United States due to a risk of head or neck entrapment between the pivoting front canopy and the arm rest or seat back of the Noticed Products.[4]

6.      The warning notes: "[t]he space in front of and behind the strollers' pivoting front canopy can entrap a child's head or neck if a non-occupant child climbs on the exterior of the stroller or when a child in the front seat of the stroller is not securely restrained in the seat using all five points of the harness."[5]

7.      Before issuing the warning, Baby Trend had at least two reports of entrapment incidents, one involving a 14-month-old infant whose neck became entrapped in the space between the front of the canopy tube and the armrest of one of the Noticed Products, who asphyxiated and died; and another involving a 17-month-old child who was entrapped in the space between the back of the canopy tube and seat back of the front seat, resulting in neck bruising.[6]

8.      In its warning, Baby Trend states, "[c]onsumers can mitigate the hazard by removing and separately storing the canopy when not in use, not allowing children to play on the strollers, and always fully securing children in the strollers with the built-in five-point harness."[7]

9.      Notably, Baby Trend has not recalled the Noticed Products or offered any recall, replacement, or program to reimburse or assuage parents who are now concerned for their child's safety.

10.     The Noticed Products have been sold since 2009 and continue to be sold.

11.     As a result of Defendant's misconduct and omissions, Plaintiff and

---

[4] *See* https://www.cpsc.gov/Newsroom/News-Releases/2023/CPSC-and-Baby-Trend-Warn-Consumers-About-Entrapment-Hazard-with-the-Detachable-Canopy-on-Baby-Trend-Sit-N-Stand-Strollers-One-Death-Reported (last accessed June 26, 2023).
[5] Id.
[6] Id.
[7] Id.

CLASS ACTION COMPLAINT

putative Class Members have suffered injury in fact, including economic damages.

12.    Plaintiff and the Class bring this suit to halt Defendant's unlawful sales and marketing of the Noticed Products and for economic damages they sustained as a result. Given the massive quantities of the Noticed Products sold nationwide, this class action is the proper vehicle for addressing Defendant's misconduct and attaining needed relief for those affected.

## PARTIES

13.    Plaintiff Gregary Johnson is and was at all times relevant to this matter a resident of the State of California residing in Santa Maria, in the county of Santa Barbara. Plaintiff is a citizen of California.

14.    Defendant is a corporation organized under the laws of the State of California, having a principal place of business at 10348 Valley Boulevard, Fontana, California 92335 in San Bernardino county . At all relevant times hereto, Defendant has designed, built, manufactured, marketed, distributed, promoted, and/or marketed and sold the Noticed Products nationwide, including in California.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act of 2005 ("CAFA"), because (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one member of the class and defendant are citizens of different States. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

16.    This Court has personal jurisdiction over Defendant pursuant to 18 U.S.C. §§ 1965(b) & (d) because Defendant maintains its principal place of

business in, and is thus a resident of, this State, maintains minimum contacts with the United States and this State, and intentionally avails itself of the laws of the United States and this State by conducting a substantial amount of business in California. On information and belief, Defendant manufactures distributes, and markets the Noticed Products in California. At least in part because of Defendant's misconduct as alleged in this lawsuit, the Noticed Products were sold to and purchased by consumers in this State. For these same reasons, venue properly lies in this District and vicinage pursuant to 28 U.S.C. §§ 1391(a), (b), and (c).

## COMMON FACTUAL ALLEGATIONS

17.    Defendant is a "baby gear" company offering "affordable prices without sacrificing on quality, comfort, or style."[8] Defendant developed, marketed, and sold a variety of Sit N' Stand Double and Ultra Strollers. These devices typically cost over $100.00. Defendant has sold these Noticed Products since 2009.

18.    Defendant represents it has a "goal of providing the safest, most reliable products available at an affordable price."[9]

19.    According to its website, Defendant "offers Products at top tier quality that are durable and safe for baby."[10] To this end, under the "Recall and Safety Notices" heading of its website[11], Defendant emphasizes its interest in safety testing:

Our Safety Pledge and Product Recalls

Nothing is more important to us at Baby Trend than the *safety of your child*. Many of us here are parents ourselves, who understand that you are placing

---

[8] https://babytrend.com/pages/about-us (last accessed June 26, 2023).
[9] Id.
[10] Id.
[11] https://babytrend.com/pages/safety-notices (last accessed June 22, 2023).

CLASS ACTION COMPLAINT

your trust in our hands when you purchase our products to carry your little one. For 35 years, we have *designed each of our products first and foremost with safety in mind*, and we have applied *strenuous testing procedures* and thorough quality inspection processes to make sure *only the safest products* reach the store shelves.

While we strive for perfection, there have been occasions when we have had to recall a product to make improvements, or to modify it to ensure it meets the latest safety standards. We work closely with the Consumer Product Safety Commission (CPSC), the National Highway Transportation Safety Administration (NHTSA) and other regulatory agencies on all reported incidents involving a Baby Trend product. When you register your product on our APP, website or through the prepaid registration card, it enables us to quickly contact you should there be any concerns with a product you have purchased.

…

Here at Baby Trend, we are committed to the quality of our products and their compliance with the highest level of safety standards!

(emphasis added).

20.     Defendant makes similar representations on the websites of third-party retailers.  For example, on the Walmart.com listing for one of the Noticed Products (SS76D18A), Defendant touts its safety attributes, stating: "Double the *safety*, double the style, and double the babies is exactly what you can do with the Sit N' Stand Double Infant Stroller from Baby Trend. This convertible double stroller features 2 seats or can be used as a removable rear seat for a standing platform that provides a place for older children. Sometimes kids aren't able to sit still, so this stroller gives them the option of sitting, standing, or sleeping to accommodate all of their needs. . . . Whether you're strolling through the park or have a full day of running errands, *keep your children safe and secure* with the

CLASS ACTION COMPLAINT

Baby Trend Sit N' Stand Double Infant Stroller."[12]

**A.     The Sit N' Stand Double and Ultra Devices Endanger Children**

21.     The Noticed Products contain a safety defect in the form of an unreasonable risk of physical harm, namely, head or neck entrapment between the pivoting front canopy and the armrest or seat back of the Noticed Products.

22.     After receiving two reports of entrapment incidents involving infants who become entrapped in the Noticed Products, including a non-occupant 14-month-old child who became trapped in the space between the front of the canopy tube and armrest of a Sit N' Stand Double stroller and asphyxiated and died, and a partially secured 17-month old child who became entrapped in the space between the back of the canopy tube and the seat back of the front seat, resulting in neck bruises, Baby Trend announced a warning relating to its Sit N' Stand Double and Ultra strollers. Specifically, Baby Trend warned that "[t]he space in front of and behind the strollers' pivoting front canopy can entrap a child's head or neck if a non-occupant child climbs on the exterior of the stroller or when a child is in the front seat of the stroller is not securely restrained in the seat using all five points of the harness."[13]

23.     Notably, Defendant did not *recall* the products but merely "encouraged" consumers to report incidents or injuries associated with the Noticed Products.[14]

24.     The Noticed Products include:

         a. the Baby Trend Sit N' Stand Double stroller models beginning

---

[12] https://www.walmart.com/ip/Baby-Trend-Sit-N-Stand-Easy-Fold-Toddler-Baby-Double-Stroller-Khaki/729767959 (last accessed June 22, 2023).
[13] *See* https://www.cpsc.gov/Newsroom/News-Releases/2023/CPSC-and-Baby-Trend-Warn-Consumers-About-Entrapment-Hazard-with-the-Detachable-Canopy-on-Baby-Trend-Sit-N-Stand-Strollers-One-Death-Reported (last accessed June 26, 2023).
[14] Id.

**CLASS ACTION COMPLAINT**

1  with SS76, pictured below:



CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



b. and the Baby Trend Sit N' Stand Ultra stroller models beginning with SS66, also pictured below:

9



CLASS ACTION COMPLAINT



25.  Industry standards applicable to infant and child strollers require that strollers be designed to protect against head and neck entrapment, including by avoiding "V" and "U" shapes.  This can be accomplished in various ways, including adjusting the space between components to eliminate the possibility of entrapment. The Noticed Products lack such a design. This alternative, feasible design has been available for decades, and there is no resulting loss of function or

CLASS ACTION COMPLAINT

utility.

26.   Indeed, several competitor stroller designs existed on the market when the Notice Products were manufactured and sold. Examples of double strollers by other suppliers with similar designs that eliminate this head entrapment hazard include the Graco DuoGlider Click Connect and the Chico Cortina Together double stroller.



Figure 11. Graco double stroller from 2018



Figure 12. Chicco Cortina Together double stroller (2022)

**CLASS ACTION COMPLAINT**

27.  The concept of head entrapment is a known hazard identified not only in stroller manufacturing standards but also in the general safety field for decades. For example, this hazard has been addressed in publications by the CPSC. The CPSC published *A Handbook for Public Playground Safety* in 1981 and specifically addressed the entrapment hazard, noting: "Entrapment. No component or group of components should form angles or openings that could trap any part of a child's body or a child's head. If part of an accessible opening is too small to allow children to withdraw their heads easily and the children are unable to support their weight by means other than their heads or necks, *strangulation may result*."

28.  Additionally, consumers—the parents and caretakers of young children and toddlers—reasonably expect that strollers are safe for their intended purpose. Consumers would not anticipate that a product specifically made for use by children and marketed as such is designed in a manner that could seriously injure their children with normal, everyday use.

29.  The safety defect renders the Noticed Products unfit for the ordinary purpose they are used, which is to safely and consistently transport infants and toddlers in both seated and standing positions.

30.  The safety defect is present in all Noticed Products at the time of sale because it is inherent in the design of the Products and is present when the Products come off the assembly line.

**B.     The Safety Risks to Infants Associated with the Use of the Noticed Products Renders Them Worthless or Diminished in Value**

31.  As a result of the safety risks to infants associated with the use of the Noticed Products, together with Defendant's concealment of these risks from the date they were first reported to Defendant or discovered by Defendant and continuing through the present, as the Noticed Products were not recalled, the

13

Noticed Products have been rendered entirely worthless or, at the very least, have been substantially diminished in value.

32.    The known safety risks to infants of the Noticed Products, described above have rendered the Noticed Products worthless to consumers. If parents of infants choose to discontinue the Noticed Products, they must pay for another expensive replacement product for their infants.

33.    Rather than recall the Noticed Products or even instruct parents to place them away, Defendant's advice is for parents to "mitigate the hazard by removing and separately storing the canopy when not in use, not allowing children to play on the strollers, and always fully securing children in the strollers with the built-in five-point harness."[15]

34.    Furthermore, in a statement to NBC News following the joint "warning" by Defendant and CPSC, Defendant falsely stated that "Baby Trend and the CPSC agree that Sit N' Stand Double and Ultra strollers with detachable canopy are completely safe when used as intended and in accordance with the company's operating instructions. . . . This tragic and exceedingly rare accident could have been altogether avoided if the young toddler had not been permitted to climb and play on the stroller, which was not being used as intended at the time."[16]

35.    In truth, after Defendant issued its statement, "the CPSC said it was inaccurate for the company to say the CPSC considers the product to be 'completely safe.'"[17]

---

[15] *See* https://www.cpsc.gov/Newsroom/News-Releases/2023/CPSC-and-Baby-Trend-Warn-Consumers-About-Entrapment-Hazard-with-the-Detachable-Canopy-on-Baby-Trend-Sit-N-Stand-Strollers-One-Death-Reported (last accessed April 19, 2023).
[16] https://www.nbcnews.com/business/consumer/baby-killed-another-injured-strollers-sold-major-retailers-consumer-sa-rcna69998 (last accessed June 22, 2023).
[17] *Id.* ("We are disappointed that Baby Trend issued a clearly inaccurate statement asserting that CPSC 'agree[s]' that Sit N' Stand Double and Ultra strollers with detachable canopy are completely safe when used as intended and in accordance with the company's operating instructions.'").

14

36.    In so doing, Defendant places the blame and burden on parents for purchasing its dangerous product instead of shouldering any responsibility for the defect whatsoever. In other words, Defendant is actively concealing the safety defect.

37.    As the Noticed Products are now worthless, or at minimum substantially diminished in value, Plaintiff and the Class will have to undertake considerable expenses replacing the Noticed Products. Stated another way, if Defendant disclosed the danger presented by the strollers, demand would quickly drop, which would cause the market price of the products to plummet. Thus, due to Defendant's omissions, Plaintiff and class members paid a price premium and sustained economic injuries.

### C.    <u>Baby Trend Knew About The Defect Yet Delayed Its Notice</u>

38.    At no time before the February 9, 2023 notice (the "Notice") did Baby Trend disclose to purchasers or users the safety risks of the Noticed Products.

39.    However, Defendant was aware of the risk of infant strangulation of the Noticed Products since *at least* June 11, 2013, when a complaint about a 17-month-old becoming entrapped between the seat back and canopy umbrella left bruise marks were made to the Consumer Products Safety Commission.[18] This complaint was made for a Sit N' Stand Double Stroller with a model number starting with SS76 – one of the Noticed Products.

40.    Defendant regularly monitors consumer complaints submitted to the CPSC and responds to such complaints and inquiries. The CPSC also informs manufacturers whenever they receive a complaint about a danger. Indeed, Defendant received and responded to the June 11, 2013 complaint. In the "Comments from the Manufacturer" section of the June 11, 2013 complaint,

---

[18] https://saferproducts.gov/PublicSearch/Detail?ReportId=1333793 (last accessed June 26, 2023).

**CLASS ACTION COMPLAINT**

Defendant noted: "Based on the information provided by the consumer regarding the product's condition, we do not believe that the product is defective… we do not believe that this case suggests a potential product hazard."[19]

41.    Despite this notice from *over ten years ago*, Defendant continues to manufacture and sell the Noticed Products with such awareness.

42.    A CPSC complaint resulting in bodily injury or death caused by a product ordinarily triggers prompt review and testing by the manufacturer. On information and belief, Defendant's testing shortly after receipt of the June 11, 2013 complaint confirmed the safety defect.

43.    Additionally, Defendant is experienced in designing and manufacturing strollers such as the Noticed Products. As an experienced manufacturer, Defendant conducts pre-sale safety testing to verify the safety risks posed to users of the products. On information and belief, Defendant discovered this safety risk during testing before publicly releasing the strollers for sale but made a business decision not to take action, including redesigning and recalling the Products.

44.    Of note, the asphyxiation death that triggered the CPSC warning resulted in a wrongful death action against Defendant by the family of the deceased infant. In connection with that litigation, Defendant produced a report summarizing complaints received from users of the Noticed Products, confirming that Defendant had been advised repeatedly regarding child asphyxiation risk.[20] The report evidences notice of the following:

a.    July 3, 2014: a 19-month-old "slipped through in between the seat and child tray. Child was stuck under the child tray and he was choking."

[19] Id.
[20] *Tessmer v. Baby Trend, Inc*., No. 21-3268, Dkt. 73-3 (W.D. Mo. Dec. 22, 2022).

16

b.    June 11, 2013: "17-month-old was in the front seat and had gotten stuck in seatback and canopy...his head got stuck between the rear frame of the front canopy and the frame of the stroller. Customer had to move the canopy forward to release the child from the stroller," and that occurred while the child was in the seat.

c.    July 19, 2013: The customer reports, "We have repeatedly experienced pretty major safety concerns in the front seat area" and the "canopy." Customer said, "He had his neck crushed, head stuck, arm smashed, arm stuck" due to this entrapment area in the design.

d.    June 9, 2020: The child got his "arm stuck in one of the arm rests of the front seat, and she believes the design needs to be changed...the child's arm was caught in the opening of the arm rest and using dish soap, they were able to slide the child's arm out. She doesn't like the size of the opening."

e.    March 8, 2010: A two-year old got his head stuck in the stroller, and fire fighters had to come and use a machine to cut his head out from the bars.

45.    Defendant thus knew of the safety defect and its associated manifestations and damage but made no substantive design modifications to eliminate the defect.

46.    Defendant unreasonably and unjustly profited from the manufacture and sale of the Noticed Products and unreasonably put infants at risk of development of strangulation.

**D.    <u>Defendant Fails to Disclose the Latent Safety Defect to Consumers at the Point of Sale</u>**

47.    Consumers cannot reasonably know about or discover the dangerous

nature of the strollers at the point of sale. Although images of the strollers are contained on product packaging, consumers do not realize that there is a material risk of death through regular and ordinary use.

48.    As a "standing" stroller, it is designed to transport children in a standing position or as "non-occupants." Therefore, it is reasonably foreseeable that, through normal use, a non-occupant child would climb on the exterior stroller—which can unexpectedly lead to strangulation and death.

49.    Additionally, as a "seated" stroller, it is designed to transport children in a seated position. It is reasonably foreseeable that a child placed in the stroller may not have been "securely restrained in the seat using all five points of the harness" (as Defendant demands) because the parent or caretaker would have no reason to believe the failure to use "all five points of the harness" risks strangulation and death.

50.    Instead, consumers reasonably expect that Defendant—who has far greater expertise in product safety and specifically product safety for children— would not market an unsafe product. For lay consumers who inexperienced in product design, the strollers are not obviously unsafe in appearance.

E.    **Plaintiff Gregary Johnson**

51.    Plaintiff Gregary Johnson purchased the Sit N' Stand Double stroller, the model number beginning with "SS76," from a Walmart in Arroyo Grande, California, in March or April 2022, for $239.99.

52.    Plaintiff has a young child and an infant and wanted to purchase a safe double stroller for his infant children.

53.    Before purchasing the Noticed Product, Plaintiff Johnson reviewed information about the Noticed Product on the Noticed Product's packaging and labeling. The Product was described as a stroller suitable for infant and toddler use in both sitting and standing positions. Exemplar images of the Product's packaging are shown below.





54.    As a reasonable consumer, he believed that information regarding

CLASS ACTION COMPLAINT

critical safety risks, like the risk of strangulation and death described above, would have been disclosed by the manufacturer on the packaging. Because no such risk was disclosed, he understood label statements and accompanying images as representations made by Defendant that the Noticed Products were safe for his children to use.

55.    Plaintiff Johnson relied on Defendant's omissions in purchasing Defendant's Noticed Product.

56.    Shortly after using the Noticed Product as intended, Plaintiff's infant child fell through spacing in the stroller into the "diaper bag" carriage underneath.

57.    Later, Plaintiff discovered the Notice concerning his Product and its inherent safety issues and dangerousness.

58.    Plaintiff has stopped using the Notice Product because it is worthless, and Plaintiff is concerned that the Noticed Product is unsafe to use.

59.    Plaintiff Johnson did not receive the benefit of his bargain because Defendant's Noticed Products are not safe to use by children and infants. Instead, infants and children can become entrapped by the spacing in front and back of the strollers' pivoting front canopy, a strangulation hazard.

60.    Indeed, Plaintiff is concerned about safety and has left the double stroller unused in his home.

61.    Had Plaintiff known or otherwise been made aware of the defect in the Product, he would not have purchased it or would have paid significantly less for it. At a minimum, Plaintiff paid a price premium for the Noticed Product, based on Defendant's omission and concealment of the safety defect, that he would not have paid had he known the truth.

62.    As a result of Defendant's conduct, Plaintiff Johnson has suffered economic damages because the Noticed Product that he purchased is now

CLASS ACTION COMPLAINT

worthless or, at least, substantially diminished in value.

63.    Plaintiff would purchase another stroller from Defendant if the product was re-designed to make it safe. Plaintiff, however, faces an imminent threat of harm because he will not be able to rely on any representations of safety and the comprehensiveness of warnings in the future and, thus, will not be able to purchase the product.

## ESTOPPEL FROM PLEADING AND
## TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

64.    Plaintiff and the members of the Class had no way of knowing about Defendant's conduct concerning the strangulation risks associated with the use and non-use of the Noticed Products.

65.    Neither Plaintiff nor any other members of the Class, through the exercise of reasonable care, could have discovered the conduct by Defendant alleged herein. Further, Plaintiff and members of the Class did not discover and did not know facts that would have caused a reasonable person to suspect that Defendant was engaged in the conduct alleged herein.

66.    For these reasons, all applicable statutes of limitation have been tolled by the discovery rule concerning claims asserted by Plaintiff and the Class.

67.    Further, by failing to provide immediate notice of the risks of strangulation associated with continued use and non-use of the Noticed Products, Defendant concealed its conduct and the existence of the claims asserted herein from Plaintiff and the Class members.

68.    Upon information and belief, Defendant intended its acts to conceal the facts and claims from Plaintiff and Class members. Plaintiff and Class members were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendant's

CLASS ACTION COMPLAINT

conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiff or Class members should be tolled.

69.    As a factual matter, Plaintiff did not learn about the safety defect and risk of strangulation and death until shortly before filing this action. Once Plaintiff learned about the Notice and the safety defect described therein, he promptly acted to preserve his rights, filing this action. Defendant is estopped from asserting any statute of limitation defense that might otherwise apply to the claims asserted herein.

## **CLASS ACTION ALLEGATIONS**

70.    Plaintiff brings this action on behalf of himself and the following Classes pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure. Specifically, the Classes are defined as:

> **National Class**: All persons in the United States who purchased the Noticed Products for personal use and not for resale during the Class Period.

In the alternative, Plaintiff brings this action on behalf of the following State Sub-Class:

> **Multi-State Sub-Class (Implied Warranty Non-Privity):** All persons who purchased the Noticed Products for personal use and not for resale during the Class Period in the following States: Alaska; Arkansas; California; Colorado; Connecticut; Delaware; District of Columbia; Florida; Hawaii; Indiana; Kansas; Louisiana; Maine; Maryland; Massachusetts; Michigan; Minnesota; Mississippi; Missouri; Montana; Nebraska; Nevada; New Hampshire; New Jersey; New Mexico; North Dakota; Ohio; Oklahoma; Pennsylvania; Rhode Island;

22

South Carolina; South Dakota; Texas; Utah; Vermont; Virginia; West Virginia; Wyoming.

**California Sub-Class**: All persons in California who purchased the Noticed Products for personal use and not for resale during the Class Period.

71.    Excluded from the Classes are (a) any officers, directors or employees, or immediate family members of the officers, directors, or employees of any Defendant or any entity in which a Defendant has a controlling interest, (b) any legal counsel or employee of legal counsel for any Defendant, and (c) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

72.    The "Class Period" begins on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, discovery, concealment, and accrual issues, and ending on the date of entry of judgment.

73.    Plaintiff reserves the right to amend the definition of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

74.    **Numerosity.** Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains unknown at this time, upon information and belief, there are thousands, if not hundreds of thousands, of putative Class Members.[21] Moreover, the number of members of the Classes may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented

---

[21] According to Defendant's Recall Notice, the company has sold a million strollers since 2009. *See* https://babytrend.com/pages/safety-notices (last accessed June 26, 2023).

**CLASS ACTION COMPLAINT**

if deemed necessary or appropriate by the Court with published notice.

75.    **Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist for all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

a.  Whether the Noticed Products contain the defect alleged herein;

b.  Whether Defendant failed to appropriately warn Class Members of the damage that could result from the use of the Noticed Products;

c.  Whether Defendant had actual or imputed knowledge of the defect but did not disclose it to Plaintiff and the Classes;

d.  Whether Defendant promoted the Noticed Products with false and misleading statements of fact and material omissions;

e.  Whether Defendant's marketing, advertising, packaging, labeling, and/or other promotional materials for the Noticed Products are deceptive, unfair, or misleading;

f.  Whether Defendant's actions and omissions violate California law;

g.  Whether Defendant's conduct violates public policy;

h.  Whether Plaintiff and putative members of the Classes have suffered an ascertainable loss of monies or property or other value as a result of Defendant's acts and omissions of material facts;

i.  Whether Defendant was unjustly enriched at the expense of Plaintiff and members of the putative Classes in connection with selling the Noticed Products;

j.  Whether Plaintiff and members of the putative Classes are entitled to monetary damages and, if so, the nature of such relief; and

k.  Whether Plaintiff and members of the putative Classes are entitled to equitable, declaratory, or injunctive relief and, if so, the nature of such relief.

76.    Defendant has acted or refused to act on grounds generally applicable to the putative Classes, thereby making final injunctive or corresponding declaratory relief appropriate concerning the putative Classes as a whole. In particular, Defendant has manufactured, marketed, advertised, distributed, and sold the Noticed Products that are deceptively misrepresented by omission as being safe and appropriate for human and infant use when they are not.

77.    **Typicality.** Plaintiff's claims are typical of those of the absent Class Members in that Plaintiff, and the Class Members each purchased and used the Noticed Products, and each sustained damages arising from Defendant's wrongful conduct, as alleged more fully herein. Plaintiff shares the aforementioned facts and legal claims or questions with putative members of the Classes. Plaintiff and all members of the putative Classes have been similarly affected by Defendant's common course of conduct alleged herein. Plaintiff and all members of the putative Classes sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's deceptive omissions regarding the Noticed Products being safe and appropriate for human and infant use.

78.    **Adequacy.** Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Classes. Plaintiff has retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiff and his counsel are committed to the vigorous prosecution of this action. Plaintiff has no conflicts of interest or interests adverse to those of putative

CLASS ACTION COMPLAINT

Classes.

79. **Insufficiency of Separate Actions.** Absent a class action, Plaintiff and members of the Classes will continue to suffer the harm described herein, for which they would have no remedy. Even if individual consumers could bring separate actions, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant.

80. **Injunctive Relief.** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and all Members of the Classes, thereby making appropriate final injunctive relief, as described below, concerning the members of the Classes as a whole.

81. **Superiority.** A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

    a. The damages suffered by each individual member of the putative Classes do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct;

    b. Even if individual members of the Classes had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

    c. The claims presented in this case predominate over any questions of law or fact affecting individual members of the Classes;

    d. Individual joinder of all members of the Classes is impracticable;

    e. Absent a Class, Plaintiff and members of the putative Classes will

CLASS ACTION COMPLAINT

continue to suffer harm as a result of Defendant's unlawful conduct; and

f. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the putative Classes can seek redress for the harm caused by Defendant.

82.  In the alternative, the Classes may be certified for the following reasons:

a. The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication concerning individual members of the Classes, which would establish incompatible standards of conduct for Defendant;

b. Adjudications of claims of the individual members of the Classes against Defendant would, as a practical matter, be dispositive of the interests of other members of the putative Classes who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests; and

c. Defendant has acted or refused to act on grounds generally applicable to the members of the putative Classes, thereby making appropriate final and injunctive relief concerning the putative Classes as a whole.

## INADEQUACY OF LEGAL REMEDIES

83.  In the alternative to those claims seeking remedies at law, Plaintiff and class members allege that no plain, adequate, and complete remedy exists at law to address Defendant's unlawful and unfair business practices. The legal remedies available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also United States v. Bluitt*, 815 F. Supp. 1314, 1317

**CLASS ACTION COMPLAINT**

(N.D. Cal. Oct. 6, 1992) ("The mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief."); *Quist v. Empire Water Co*., 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future.").

84. Additionally, unlike damages, the Court's discretion in fashioning equitable relief is very broad and can be awarded when the entitlement to damages may prove difficult. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 177-180 (2000) (restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred.").

85. Thus, restitution would allow recovery even when normal consideration associated with damages would not. *See, e.g., Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 68 (2007) (noting that restitution is available even when damages are unavailable). Furthermore, the standard and necessary elements for a violation of the UCL "unfair" prong and for quasi-contract/unjust enrichment are different from the standard that governs a legal claim.

## CLAIMS FOR RELIEF

## COUNT I
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of the Multi-State Class and, alternatively, the California Class)

86. Plaintiff re-alleges and incorporates by reference the preceding allegations as though set forth fully herein.

87.   Plaintiff's individual claim is brought under the laws of the State in which he purchased his Class Device (California). See Cal. Commercial Code § 2314.  The claims of absent members of the Multi-State Class and California Class are brought under the state's laws in which they purchased their Products and identified below.

      a.   Alaska Stat. §§ 45.02.314, et seq.;

      b.   Ark. Code Ann. §§ 4-2-314, et seq.;

      c.   Colo. Rev. Stat. Ann. §§ 4-2-314, et seq.;

      d.   Conn. Gen. Stat. §§ 42a-2-314, et seq.;

      e.   Del. Code Ann. Tit. 6, §§ 2-314, et seq.;

      f.   D.C. Code §§ 28:2-314, et seq.;

      g.   Haw. Rev. Stat. §§ 490:2-314, et seq.;

      h.   Ind. Code §§ 26-1-2-314, et seq.;

      i.   Kan. Stat. Ann. §§ 84-2-314, et seq.;

      j.   La. Civ. Code Ann. Art. 2520, et seq.;

      k.   Md. Code Ann., Com. Law §§ 2-314, et seq.;

      l.   Me. Rev. Stat. Ann. Tit. 11, §§ 2-314, et seq.;

      m. Mass. Gen. Laws ch. 106, §§ 2-314, et seq.;

      n.   Mich. Comp. Laws Ann. §§ 440.2314, et seq.;

      o.   Minn. Stat. §§ 336.2-314, et seq.;

      p.   Miss. Code Ann. §§ 75-2-314, et seq.;

      q.   Mo. Rev. Stat. §§ 400.2-314, et seq.;

      r.   Mont. Code Ann. §§ 30-2-314, et seq.;

      s.   Neb. Rev. Stat. Ann. §§ 2-314, et seq.;

      t.   Nev. Rev. Stat. §§ 104.2314, et seq.;

      u.   N.H. Rev. Stat. Ann. §§ 382-A:2-314, et seq.;

CLASS ACTION COMPLAINT

v.  N.J. Stat. Ann. §§ 12A:2-314, et seq.;

w.  N.M. Stat. Ann. §§ 55-2-314, et seq.

x.  N.D. Cent. Code §§ 41-02-31, et seq.;

y.  Ohio Rev. Code Ann. §§ 1302.27, et seq.;

z.  Okla. Stat. Tit. 12A, §§ 2-314, et seq.;

aa. 13 Pa. Stat. Ann. §§ 2314, et seq.;

bb. R.I. Gen. Laws §§ 6A-2-314, et seq.;

cc. S.C. Code Ann. §§ 36-2-314, et seq.;

dd. S.D. Codified Laws §§ 57A-2-314, et seq.;

ee. Tex. Bus. & Com. Code Ann. §§ 2.314, et seq.;

ff.  Utah Code Ann. §§ 70A-2-314, et seq.;

gg. Va. Code Ann. §§ 8.2-314, et seq.;

hh. Vt. Stat. Ann. Tit. 9A, §§ 2-314, et seq.;

ii.  W. Va. Code §§ 46-2-314, et seq.; and

jj.  Wyo. Stat. Ann. §§ 34.1-2-314, et seq.

88.  Defendant manufactured and distributed Noticed Products for sale to Plaintiff and the Class members.

89.  Defendant impliedly warranted to Plaintiff and Class members that their Products were free of defects and were merchantable and fit for their ordinary purpose for which such goods are used.

90.  As alleged herein, Defendant breached the implied warranty of merchantability because the Products suffer from a safety defect.  The Products are, therefore, defective, unmerchantable, and unfit for their ordinary, intended purpose.

91.  Due to the safety defect, Plaintiff and the Class members cannot operate their Products as intended, substantially free from defects.  The Products do not provide safe and reliable transportation and pose a serious risk of sudden injury and

**CLASS ACTION COMPLAINT**

death.  As a result, Plaintiff and members of the Class cannot use their Products for the purposes for which they purchased them.

92.   Privity of contract is not required here because Plaintiff and Class Members were each intended third-party beneficiaries of the Products sold through independent retailers. The retailers were not intended to be the ultimate consumers of the Products and have no rights under the implied warranty provided with the Products.

93.   Plaintiff did not receive or otherwise have the opportunity to review, at or before the time of sale, any purported warranty exclusions and limitations of remedies.   Accordingly, any such exclusions and limitations of remedies are unconscionable and unenforceable. As a direct and proximate result of the breach of implied warranty of merchantability, Plaintiff and Class members have been injured in an amount to be proven at trial.

## COUNT II
### VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT - BREACH OF IMPLIED WARRANTY
### Cal. Civ. Code §§ 1791.1 & 1792
### (On Behalf of the California Class)

94.   Plaintiff re-alleges and incorporates by reference the preceding allegations as though set forth fully herein.

95.   Plaintiff brings this claim on behalf of himself and behalf of the California Class against Defendant.

96.   Plaintiff and the other Class members who purchased the Products in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

97.   The Products are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

98. Defendant is a "manufacturer" of the Products within the meaning of Cal. Civ. Code § 1791(j).

99. Defendant impliedly warranted to Plaintiff and the other Class Members that the Products were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1 & 1792.

100. However, the Products do not have the quality that a reasonable purchaser would expect.

101. Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following: "(1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purposes for which such goods are used; … and (4) conform to the promises or affirmations of fact made on the container or label."

102. The Products would not pass without objection in the trade because of the safety defect alleged herein, including the failure to design a product that comports with industry standards and avoids "U" and "V" shapes.

103. The Products are not fit for the ordinary purpose they are used because of the safety defect as alleged herein.

104. The safety defect in the Products is latent. Though the Products appear operable when new, the safety defect existed at the time of sale and throughout the one year under the Song-Beverly Act. Accordingly, any subsequent discovery of the safety defect by Class Members beyond that time does not bar an implied warranty claim under the Song-Beverly Act.

105. Further, despite due diligence, Plaintiff and Class Members could not have discovered the safety defect before the manifestation of its symptoms in the form of physical injury or death. Those Class Members whose claims would have

**CLASS ACTION COMPLAINT**

otherwise expired allege that the discovery rule and doctrine of fraudulent concealment tolls them.

106. Defendant breached the implied warranty of merchantability by manufacturing and selling Products containing the safety defect. The existence of the defect has caused Plaintiff and the other Class members not to receive the benefit of their bargain and have caused Products to depreciate in value.

107. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the other Class members received goods whose defective condition substantially impairs their value to Plaintiff and the other California members. Plaintiff and the other California Class members have been damaged as a result of the diminished value of the Products.

108. Plaintiff and the other California Class members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their Products or the overpayment or diminution in value of their Products.

109. Pursuant to Cal. Civ. Code § 1794, Plaintiff and the other Class members are entitled to costs and attorneys' fees.

## COUNT III
### Violation of California's Unfair Competition Law
### Cal. Bus. & Prof. Code § 17200 et seq. ("UCL")
### (On Behalf of the California Sub-Class)

110. Plaintiff re-alleges and incorporates by reference the preceding allegations as though set forth fully herein.

111. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

112. Defendant's acts and omissions as alleged herein constitute business acts and practices.

**CLASS ACTION COMPLAINT**

113.   Unlawful: The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

      a.     The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq.; and

      b.     The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq.;

114.   Unfair: Defendant's conduct concerning the labeling, advertising, and sale of the Noticed Products was "unfair" because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims. Distributing unsafe children's products has no public utility at all. Any countervailing benefits to consumers or competition did not outweigh this injury. Selling products unsafe and unfit for their intended purposes only injures healthy competition and harms consumers. Defendant also minimizes the scope of the defect despite knowing the Products are unreasonably dangerous.

115.   Defendant's conduct concerning the labeling, advertising, and sale of the Noticed Products was and is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including but not limited to the applicable sections of the Consumers Legal Remedies Act and the Song-Beverly Consumer Warranty Act.

116.   Defendant's conduct concerning the labeling, advertising, and sale of the Noticed Products was and is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided it.

117.   Fraudulent: A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable

**CLASS ACTION COMPLAINT**

consumer test.

118.   As set forth herein, Defendant engaged in deceptive acts by knowingly omitting from Plaintiff and Class members that the Noticed Products suffer from the safety defect (and the costs, risks, and diminished value of the Products as a result). Defendant knew that the Noticed Products were defectively designed, posed an unreasonable safety risk, and unsuitable for their intended use.

119.   Defendant was under a duty to Plaintiff and the Class members to disclose the defective nature of the Noticed Products because:

a.  Defendant was in a superior position to know the true state of facts about the defect and associated repair costs;

b.  Plaintiff and the Class members could not reasonably have been expected to learn or discover that the Noticed Products had a safety defect before purchase;

c.  Defendant knew that Plaintiff and the Class members could not reasonably have been expected to learn or discover the defect and the associated repair costs;

d.  Defendant made partial representations regarding the attributes and benefits of the Noticed Products on packaging and labeling while deceptively omitting the existence of the defect; and

e.  Defendant actively concealed the defect and the associated repair costs by asserting to Plaintiff and the Class members that their products were not defective.

120.   Defendant could have and should have prominently disclosed the defect on the product listings on its website, on product packaging, and to third-party retailers. Had Defendant disclosed the defect in this manner, Plaintiff and reasonable consumers would have been aware of it.

CLASS ACTION COMPLAINT

121.    The facts concealed or not disclosed by Defendant to Plaintiff and the Class members are material in that a reasonable consumer would have considered them important in deciding whether to purchase Defendant's strollers or pay a lesser price. Had Plaintiff and the Class known about the defective nature of the Noticed Products, they would not have purchased them or paid less for them.

122.    Baby Trend repeatedly advertised on the labels and packaging for the Noticed Products, on Baby Trend websites, and through national advertising campaigns, among other items, that the Noticed Products were safe and fit for infant use. Baby Trend failed to disclose the material information that the Noticed Products themselves were unsafe and unfit for infant use.

123.    Defendant profited from selling the falsely, deceptively, and unlawfully advertised Noticed Products to unwary consumers.

124.    Plaintiff and Class Members will likely continue to be damaged by Defendant's deceptive trade practices because Defendant continues disseminating misleading information on the Noticed Products' packaging. Thus, injunctive relief enjoining Defendant's deceptive practices is proper.

125.    Defendant's conduct caused and continues to cause substantial injury to Plaintiff and the other Class Members. Plaintiff has suffered injury in fact as a result of Defendant's unlawful conduct.

126.    Under Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

127.    Plaintiff and the Class also seek an order for and restitution of all monies from the sale of the Noticed Products, which were unjustly acquired through acts of unlawful competition.

**CLASS ACTION COMPLAINT**

## COUNT IV
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500 ("FAL")**
**(On Behalf of the California Sub-Class)**

128.   Plaintiff repeats and realleges the preceding allegations in paragraphs as if fully set forth herein.

129.   The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

130.   It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

131.   As alleged herein, Defendant's advertisements, labeling, policies, acts, and practices relating to the Noticed Products misled consumers acting reasonably as to the safety of the Noticed Products' ability to be used safely by infants as intended.

132.   Plaintiff suffered injury due to Defendant's actions as set forth herein because he purchased the Products in reliance on Defendant's failure to disclose that the Products were unreasonably dangerous.

133.   Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Noticed Products in a manner that is misleading and omitted material information from its advertising.

134.    Baby Trend's omissions were material because they were likely to deceive reasonable consumers into inducing them to purchase and use the Noticed Products without being aware that the potentially lethal impact of the spacing issues in front and back of the pivoting front canopy used in the Noticed Products, and therefore the Noticed Products themselves, were unsafe and unfit for infant use. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiff and the Class suffered damages by purchasing the Noticed Products because they would not have purchased or used the Noticed Products had they known the truth, and they received a product that was worthless because it contained an unsafe spacing issue which can cause several adverse health effects, including strangulation and asphyxiation.

135.    Defendant profited from selling the falsely and deceptively advertised Noticed Products to unwary consumers.

136.    As a result, Plaintiff, the California Sub-Class members, and the general public are entitled to injunctive and equitable relief, restitution, and an order to disgorge the funds by which Defendant was unjustly enriched.

137.    Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of himself and the California Sub-Class, seeks an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

## COUNT V
### Violation of California's Consumer Legal Remedies Act
### Cal. Civ. Code § 1750 et seq. ("CLRA")
### (On Behalf of the California Sub-Class)

138.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

**CLASS ACTION COMPLAINT**

139.    The CLRA prohibits deceptive practices concerning the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

140.    Defendant's omissions were designed to, and did, induce the purchase and use of the Noticed Products for personal, family, or household purposes by Plaintiff and Class Members, and violated and continue to violate the following sections of the CLRA:

      a.    § 1770(a)(5): representing that goods have characteristics, uses, or benefits that they do not have;

      b.    § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

      c.    § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

      d.    § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

141.    As set forth herein, Defendant engaged in deceptive acts by knowingly omitting from Plaintiff and Class members that the Noticed Products suffer from the safety defect (and the costs, risks, and diminished value of the Products as a result). Defendant knew that the Noticed Products were defectively designed, posed an unreasonable safety risk, and unsuitable for their intended use.

142.    Defendant was under a duty to Plaintiff and the Class members to disclose the defective nature of the Noticed Products because:

      a.  Defendant was in a superior position to know the true state of facts about the defect and associated repair costs;

      b.  Plaintiff and the Class members could not reasonably have been

**CLASS ACTION COMPLAINT**

expected to learn or discover that the Noticed Products had a safety defect before purchase;

c. Defendant knew that Plaintiff and the Class members could not reasonably have been expected to learn or discover the defect and the associated repair costs;

d. Defendant made partial representations regarding the attributes and benefits of the Noticed Products on packaging and labeling while deceptively omitting the existence of the defect; and

e. Defendant actively concealed the defect and the associated repair costs by asserting to Plaintiff and the Class members that their products were not defective.

143.    Defendant could have and should have prominently disclosed the defect on the product listings on its website, on product packaging, and to third-party retailers. Had Defendant disclosed the defect in this manner, Plaintiff and reasonable consumers would have been aware of it.

144.    The facts concealed or not disclosed by Defendant to Plaintiff and the Class members are material in that a reasonable consumer would have considered them important in deciding whether to purchase Defendant's strollers or pay a lesser price. Had Plaintiff and the Class known about the defective nature of the Noticed Products, they would not have purchased them or paid less for them.

145.    On May 23, 2023, a CLRA demand letter was sent to Defendant pursuant to Cal. Civ. Code § 1782. This letter provided notice of Defendant's violation of the CLRA and demanded that Defendant correct the unlawful and deceptive practices alleged herein. Defendant did not offer any remedy to Plaintiff and each subclass member. Accordingly, Plaintiff seeks all monetary relief available under the CLRA.

CLASS ACTION COMPLAINT

146.   Pursuant to California Civil Code § 1780, Plaintiff also seeks injunctive relief, his reasonable attorney fees and costs, punitive damages, and any other relief the Court deems proper.

## COUNT VI
### Unjust Enrichment/Quasi-Contract
### (On Behalf of the Nationwide Class and,
### alternatively, the California Sub-Class)

147.   Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

148.   Plaintiff's individual claim is brought under the laws of the State in which he purchased his Product (California).  The claims of absent members of the Nationwide Class and California Class are brought under the laws of the State in which they purchased their Products.

149.   Plaintiff and putative Class Members conferred a benefit on Defendant when they purchased the Noticed Products, which Defendant knew.

150.   Defendant either knew or should have known that the payments rendered by Plaintiff and the Class were given with the expectation that the Noticed Products would have the qualities, characteristics, and suitability for use represented and warranted by Baby Trend. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

151.   By its wrongful acts and omissions described herein, including selling the Noticed Products, which contain a defect described in detail above and did not otherwise perform as represented and for the particular purpose for which they were intended, Defendant was unjustly enriched at the expense of Plaintiff and putative Class Members.

152.   Plaintiff's detriment and Defendant's enrichment were related to and

41

flowed from the wrongful conduct challenged in this Complaint.

153.   Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and putative Class Members when it would be unjust for Defendant to be permitted to retain the benefit. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct described herein in connection with selling the Noticed Products.

154.   Defendant has been unjustly enriched in retaining the revenues derived from Class Members' purchases of the Noticed Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant manufactured the defective Noticed Products, and Defendant misrepresented by omission the nature of the Noticed Products and knowingly marketed and promoted dangerous and defective Noticed Products, which caused injuries to Plaintiff and the Class because they would not have purchased the Noticed Products based on the exact representations if the true facts concerning the Noticed Products had been known.

155.   Plaintiff and putative Class Members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the Noticed Products on the same terms or for the same price had they known the true nature of the Noticed Products and the misstatements regarding what the Noticed Products were and their characteristics.

156.   Defendant either knew or should have known that payments rendered by Plaintiff and putative Class Members were given and received with the expectation that the Noticed Products would work as represented by Defendant in advertising, on Defendant's websites, and the Noticed Products' labels and packaging. It is inequitable for Defendant to retain the benefit of payments under

these circumstances.

157.   Plaintiff and putative Class Members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

158.   As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for their inequitable and unlawful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated members of the Classes, prays for relief and judgment, including entry of an order:

A.  Declaring that this action is properly maintained as a class action, certifying the proposed Class(es), appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

B.  Directing that Defendant bear the costs of any notice sent to the Class(es);

C.  Declaring that Defendant must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Noticed Products or order Defendant to make full restitution to Plaintiff and the members of the Class(es) except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

D.  Awarding restitution and other appropriate equitable relief;

E.  Granting an injunction against Defendant to enjoin it from conducting its business through the unlawful, unfair, and fraudulent acts or practices set forth herein;

F.  Granting an Order requiring Defendant to fully and adequately disclose the

CLASS ACTION COMPLAINT

safety risks associated with the Noticed Products to anyone who may still be at risk of buying and using the Noticed Products;

G.  Ordering a jury trial and damages according to proof;

H.  Enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

I.  Awarding attorneys' fees and litigation costs to Plaintiff and members of the Class(es);

J.  Awarding prejudgment interest, and punitive damages as permitted by law; and

K.  Ordering such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated: July 3, 2023                     Respectfully submitted,

*/s/ Alexander E. Wolf*
Alexander E. Wolf (SBN 299775)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN**
awolf@milberg.com
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212
Tel: 872.365.7060

Gary M. Klinger*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
T: (866) 252-0878
gklinger@milberg.com

Kevin Laukaitis*
**LAUKAITIS LAW LLC**

44

CLASS ACTION COMPLAINT

954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, Puerto Rico 00907
Phone: (215) 789-4462
E-mail: klaukaitis@laukaitislaw.com

*Pro Hac Vice* Application Forthcoming

*Attorneys for Plaintiff and Putative Class Members*

CLASS ACTION COMPLAINT